UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

EAT BBQ LLC, et al.,                    )
                                        )
        Plaintiff,                      )        Civil No. 12-71-GFVT
                                        )
V.                                      )
                                        )        **MEMORANDUM OPINION**
THOMAS C. WALTERS,                      )        **&**
                                        )        **ORDER**
        Defendant.                      )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Daniel Liebman and Tommie Walters had an idea and began implementing that idea as, at least in the most fundamental sense of the word, partners.  Sadly, their collaboration ceased and disputes relating to its disbanding are now before the Court. More specifically, Liebman obtained trademarks that he now claims Walters infringed upon and Walters argues that he is owed a percentage of the value of the enterprise they created.

**I**

In November 2010, Daniel Liebman and Tommie Walters opened their first restaurant together in Louisville, Kentucky.  The financial support came, with the help of a few investors, from Liebman.  Walters contributed his experience in the restaurant industry and the idea for the STAXX name.  Before partnering with Liebman, Walters had used the STAXX moniker in limited circumstances, but had not registered it with the United States Patent and Trademark Office (Trademark Office).  The restaurant in

1

Louisville, STAXX Roadhouse, was short-lived, closing by August of 2011. Prior to its closing, however, Liebman and Walters opened a second restaurant, STAXX BBQ in Frankfort, Kentucky. This location is still open.

After adopting STAXX as the identifying mark of the restaurants, Liebman applied for protected use of the moniker in two forms, STAXX and STAXX BBQ. Walters knew of the applications to the Trademark Office but did not file an objection as he did not want to "rock the boat." [R. 37 at 3.] Instead, he emailed Liebman and Susan Knoll, an investor, and encouraged them to add him as an owner of the trademarks. [R. 37-2, at 26 (Email dated 8/24/2011).] Knoll explained to Walters that he was "not an owner of the marks as defined by the U.S. Trademark Statute." [*Id.* at 27 (Email dated 8/24/2011).] The marks were subsequently approved by, and registered with, the Trademark Office. As of September 4, 2012, Liebman has been the owner of U.S. Registration No. 4,201,038 which protects his service mark "STAXX BBQ" and, as of October 2, 2012, Liebman has owned U.S. Registration No. 4,216,466 which protects the "STAXX" mark. [R. 31-2; R. 31-3.] Plaintiffs use these marks to advertise and promote STAXX BBQ.

Liebman and Walters severed ties in May 2012. [R. 31-4 at 10-11.] After parting ways with Liebman, Walters continued to cater and provide food services and used the marks registered in Liebman's name to promote and advertise his business. [R. 4-7; R. 31-7.] Plaintiffs became aware of the alleged infringement which led to the present litigation.

Plaintiffs filed a motion for injunctive relief contemporaneously with the

Complaint.  After holding an evidentiary hearing and receiving briefing on the issue, this Court granted a preliminary injunction on November 16, 2011, that prohibited Walters from using the disputed marks pending ultimate resolution of this dispute.  [R. 4.]  On November 1, 2012, along with his answer, Walters asserted counterclaims seeking (1) declaratory relief, (2) cancellation of the STAXX mark, (3) cancellation of the STAXX BBQ mark and also alleging (4) contempt.  [R. 13.]  In their first amended complaint, Plaintiffs assert claims for trademark infringement and false designation under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, § 1125(a), unfair competition under Kentucky's common-law, conversion and tortious interference with prospective business relations.  [R. 29.]  Walters' first amended answer denies liability and alleges a single counterclaim for declaratory relief on the question of his partnership interest.  [R. 32.]  Currently pending before the Court are Plaintiffs' partial motion for summary judgment [R. 31] and Walters' late-filed motion seeking to join indispensable parties.[1]  For the reasons set forth below, Plaintiffs' motion for partial summary judgment will be GRANTED in part and DENIED in part.  [R. 31.]

## II

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1]  Walters seeks to join investors Knoll and Koch as indispensable parties, arguing that they have a potential claim "to the same extent and of the same type as to the existing plaintiffs."  [R. 45-2.]  Contrary to his argument, Knoll and Koch's "potential claims" are not of the same type as those plead by Liebman and Eat BBQ as Plaintiffs' claims primarily relate to the infringement of trademarks that are registered in the sole name of Dan Liebman.  As the Court does not believe either Knoll or Koch to be necessary parties for the resolution of these claims, the Court will proceed to rule on Plaintiffs summary judgment motion at this time.  However, the Court does consider, *infra* Section III, Walters' request to join these parties as necessary for purposes of resolving his counterclaims.

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' " *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In deciding a motion for summary judgment, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). In terms of burden shifting, the moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324.) Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Id.* (internal citations omitted).

The trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir.

2001) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).

Instead, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655. Particularly relevant here, "to avoid summary judgment in a Lanham Act case alleging violations of § 32 (15 U.S.C. § 1114), and § 43 (15 U.S.C. § 1125), the nonmoving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement." *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 622-23 (6th Cir. 1996) (citing *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir. 1991)); *see also Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002).

## A

The Lanham Act, codified at 15 U.S.C. § 1051 et seq., protects the trademark rights of businesses and individuals. *See* 15 U.S.C. § 1114. "The purpose of the trademark statutes is to protect the trademark holder's quasi-property interest in the mark and prevent consumer confusion about the actual source of goods using the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 687 (W.D. Ky. 2010) aff'd, 679 F.3d 410 (6th Cir. 2012) (citing *Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960, 964 (6th Cir. 1987)).

Section 32 of the Lanham Act provides that a person is liable for trademark infringement when he, without consent of the registrant, does "use in commerce any … copy, or colorable imitation of a registered mark in connection with the sale, offering for

sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion…" 15 U.S.C.A. § 1114(1)(a). Thus, to succeed, a Plaintiff must show (1) they had a registered trademark, (2) it was used without consent and (3) its use was likely to cause confusion. *Id.*

Section 43(a) of the Lanham Act creates a federal cause of action for trademark infringement claims. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (citing 1 J. Gilson, Trademark Protection and Practice § 2.13, p. 2–178 (1991)). That Section provides that:

> **Any person who**, on or in connection with any goods or services, or any container for goods, **uses in commerce any word, term, name, symbol**, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, **which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods…or commercial activities by another person**…. **shall be liable** in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(1)(a) (emphasis added).

Assuming the Plaintiffs have a valid, registered trademark and the use is non-consensual, the test is the same under both Section 32 and 43(a); "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?' " *Two Pesos, Inc.*, 505 U.S. at 780 (quoting *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (CA9 1979) (footnote omitted)). Furthermore, federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis. *See Maker's Mark Distillery, Inc.,* 703 F. Supp. 2d at FN 17 (citing *Winchester Federal Savings Bank v.*

*Winchester Bank, Inc.,* 359 F.Supp.2d 561, 564 (E.D. Ky. 2004) ("Once the plaintiffs establish that the marks are valid and protectable, they must establish that the defendant's service mark is likely to cause confusion among consumers in the marketplace in order to prevail on all of the state and federal claims.")(additional citations omitted).  Thus, to prove trademark infringement, false designation and unfair competition, Plaintiffs must show that (1) they held the trademarks, (2) they did not consent to Walters' use of those marks and (3) Walters' use of the marks was likely to cause confusion among relevant consumers.

## 1

The Court must first confront the question of whether Liebman's trademark rights are superior to the rights of Walters.  As discussed earlier, Liebman has registered both the "STAXX" and "STAXX BBQ" marks with the Trademark Office.  [R. 31-2; R. 31-3.] Walters argues, although not all that forcibly, that his use of the STAXX marks preceded Plaintiffs' use and that, as a result, he has superior rights.  [R. 37 at 2.]

"One of the bedrock principles of trademark law is that trademark or 'service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.'" *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) (*Allard I*) (quoting *Homeowners Group, Inc.,* 931 F.2d at 1105.)  Put another way, registering a trademark with the Trademark Office does not "create rights and priority over others who have previously used the mark in commerce," 15 U.S.C. § 1057(b), because "[t]he territorial rights of a holder of a federally registered trademark are always subject to any

superior common law rights acquired by another party through actual use prior to the registrant's constructive use." *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) (*Allard II*). Registration does, however, serve as prima facie evidence of the validity of that mark. 15 U.S.C. § 1115(a). "The effect of the statutory presumption contained in § 1115(a) is to shift the burden of proof to the alleged infringer." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 514 (6th Cir. 2007); *see also Allard I*, 146 F.3d at 356.

Generally, "[t]he first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to the mark in the geographic area in which the mark is used." *Allard II*, 249 F.3d at 572. In the context of trademarks, however, the word "use" retains a special meaning. Any use will not do. Rather, "[a] party establishes a common law right to a trademark only by demonstrating that its use of the mark was 'deliberate and continuous, not sporadic, casual or transitory.'" *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054-55 (6th Cir. 1999) (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1272 (2d Cir.1974)). Put another way, "[c]ommon law trademark rights develop when goods bearing the mark are placed in the market and *followed by continuous commercial utilization*." *McDonald's Corp. v. Burger King Corp.*, 107 F. Supp. 2d 787, 790 (E.D. Mich. 2000) (citing *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 113 (S.D.N.Y. 1989) (emphasis added). Furthermore, "[u]se sufficient to establish common law trademark rights must be 'sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the

mark.' * * * The activities 'must have substantial impact on the purchasing public.'"
*Burger King Corp.*, 107 F. Supp. 2d at 790 (quoting *Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.*, 986 F. Supp. 253, 259 (D. Del. 1997) aff'd, 186 F.3d 311 (3d Cir. 1999)).

The question of whether prior use of a service mark qualifies a defendant for trademark rights is a "mixed question of law and fact." *Allard I*, 146 F.3d at 355. First, the Court must consider what facts exist to support the defendant's claim to prior use. Second, the Court must decide, as a matter of law, whether the "defendants' prior use was sufficient to establish ownership of the service mark." *Id*. Because Liebman holds registered trademarks for the disputed marks, the burden is on Walters to prove he possesses superior common law rights. *Allard II.*, 249 F.3d at 573.

To show that he possesses common-law trademark rights, Walters presents the following examples of his prior use of the "STAXX" and "STAXX BBQ" marks:

- "STAXX Ribs [were] on menus at Furlongs, Steakhouse Express, and Riptide at the River" since the early 2000's. [R. 37 at 2; R. 37-4 (copies of menus).]

- On August 12, 2009, a menu prepared by Walters and emailed to Liebman referred to "Staxx Blackberry Baby Back Ribs." [R. 37-2 at 2.]

- On September 27, 2010, Walters created a "Furlongs Catering and Staxx Catering" page on Facebook. [R. 18 at 3; R. 37-3 (Facebook Pages); R. 37-4 at 12 (Facebook Pages).]

- On September 27, 2010, Walters procured estimates for STAXX signs for STAXX Roadhouse in Louisville [R. 37-2 at 10.]

- Walters used a "Staxxroadhouse@gmail.com" email account before EAT, LLC and EAT BBQ LLC were even formed. [R. 18 at 3.]

Even when the Court assumes that all of the above propositions are true, as the Court must do at this stage of the litigation, the facts and examples supplied by Walters do not present a genuine issue of material fact on the legal question of whether his past use of the marks is sufficient to earn him common law trademark rights.

Walters has not presented sufficient evidence to show that his prior use was "deliberate and continuous" as opposed to "sporadic, casual or transitory.'" *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054-55 (6th Cir. 1999). Furthermore, Walters has not shown that "the use was sufficiently public to identify or distinguish the marked goods" or that potential customers did connect the marks with his services. *See McDonald's Corp. v. Burger King Corp.*, 107 F.Supp.2d 787, 790 (E.D. Mich. 2000).

Liebman, therefore, holds senior trademark rights to the marks and there is no question that Walters did not have Liebman's consent. The question now becomes whether Walters' use of the marks is likely to cause confusion.

**2**

"Whether there is a likelihood of confusion is a mixed question of fact and law." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988)). First, the Court must consider the "fact[s] supporting the likelihood of confusion factors" and

then, secondly, answer the legal question of "whether those foundational facts constitute a 'likelihood of confusion.'" *Id.* (citing *Wynn*, 839 F.2d at 1186 (additional citations omitted)). In determining whether Walters' use of the marks likely caused consumer confusion, the Court is to consider eight factors: 1) strength of the plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *Maker's Mark Distillery, Inc.*, 679 F.3d at 419 (citing *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.), *cert. denied,* 459 U.S. 916 (1982)); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754 (6th Cir. 2005); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Finally, confusion is to be evaluated "with respect to the relevant consumer market" which are defined as "potential buyers of the 'junior' product.'" *Maker's Mark Distillery, Inc.,* 679 F.3d at 419 (citing *Leelanau Wine Cellars, Ltd.,* 502 F.3d at 518).

In this case, the marks used by Walters are identical to the marks that Liebman trademarked. In situations where the marks are identical, there is almost never a dispute regarding confusion.

> Obviously, since both marks use absolutely identical language to sell a nearly identical service,[] the likelihood of confusion must be considered great. As Professor McCarthy wrote, "[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement."

*Wynn*, 839 F.2d at 1190-91 (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:20 (4th ed.)). Nevertheless, and despite the fact that Walters does not even address

11

the issue of confusion in his response [*See* R. 37], the Court again briefly considers the above factors.

### a

"A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Frisch's Restaurant, Inc.,* 670 F.3d at 647. Plaintiffs argue that their marks are arbitrary and, therefore, inherently distinctive. [R. 31-1 at 8.] Walters has offered nothing to refute this assertion, and the Court can find nothing in the record to suggest otherwise.

### b

Where "the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar." *Daddy's*, 109 F.3d at 282 (citing *Champions Golf Club,* 78 F.3d at 1118). In this case, both Liebman and Walters, through his catering service, sell barbeque. They have nearly identical, if not identical, menu items. They compete directly against each other and, as this Court has past concluded, Walters solicited business directly from Plaintiffs' customers. [*See* R. 19 at 5.]

### c

The similarity of the marks is "a factor of considerable weight." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004) (quoting *Daddy's,* 109 F.3d at 283.) When considering how similar the marks are:

> courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks

12

may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.

*Maker's Mark Distillery, Inc.,* 679 F.3d at 421 (quoting *Daddy's,* 109 F.3d at 283 (internal quotation marks omitted)).  In this case, the marks are identical.

### d

When it exists, evidence of actual confusion "is undoubtedly the best evidence of likelihood of confusion." *AutoZone, Inc.*, 373 F.3d at 798 (quoting *Wynn Oil I,* 839 F.2d at 1188).  As the Court explained in its past order:

> During the hearing, Liebman recounted hearing from a lady, an existing customer, who had received an email with promotional materials from Walters. The email included the "STAXX BBQ" trademark, and the "staxxbbq@gmail" email address. The lady was confused, however, about the source of the email because Liebman's name and business contact information were absent from the materials.

Memorandum Opinion & Order [R. 19, at 6.]  Again, Walters has not rebutted this testimony.

### e

The Court must "consider the similarities or differences between the predominant customers of the parties' respective goods or services." *Daddy's*, 109 F.3d at 285 (citing *Homeowners Group,* 931 F.2d at 1110).  This further requires Courts to consider whether "the marketing approaches employed by each party resemble each other." *Id.* (citing *Homeowners Group,* 931 F.2d at 1110.  Again, Walters has provided no evidence to rebut the Court's past conclusion:

> Walters is indeed using the same marketing channels used by STAXX BBQ. [R. 4-7.] He is intentionally placing the "staxxbbq" email address on his promotional materials impliedly suggesting that he is an agent of STAXX BBQ. [R. 4-7.] Further, he is advertising and competing for the same customers and events as

Plaintiffs. [*Id.*; R. 4-2, at 2.] Such occurrences show that Walters has used the same marketing channels to promote his services.

Memorandum Opinion & Order [R. 19, at 5.]  With no additional evidenced presented, the Court has no reason to alter its earlier position.

**f**

"[C]onfusingly similar marks may lead a purchaser who is extremely careful and knowledgeable ... to assume nonetheless that the seller is affiliated with or identical to the other party." *Maker's Mark Distillery, Inc.,* 679 F.3d at 423 (quoting *Daddy's*, 109 F.3d at 286).  Where the product at issue is relatively cheap, it may be assumed that consumers are less likely to employ significant care in making the purchase.  *See Daddy's,* 109 F.3d at 285 ("[H]ome buyers will display a high degree of care when selecting their real estate brokers, [] whereas consumers of fast-food are unlikely to employ much care during their purchases." (internal citations omitted).  "[W]hen services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases."  *Id.* (quoting *Homeowners Group,* 931 F.2d at 1111.)  In this case, the food at issue is not expensive and so consumers cannot be expected to exercise a high degree of care or be overly critical.  This weights in favor of a finding of likely confusion.

**g**

When it can be shown that the defendant's intention in using a mark was to benefit from the reputation of that mark then "that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'"  *Wynn Oil Co.*, 839 F.2d at 1189 (quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899 (1980) (quoting Restatement of Torts § 729 comment f (1938)).  Neither

party has provided the Court with any new evidence that might change the Court's

position on this point. As the Court stated in its earlier order:

> Whether [Walters] is purposefully attempting to avail himself of the goodwill
> built by Plaintiffs is unclear, but the case can be argued quite persuasively that by
> using the STAXX marks to promote his services, he impliedly concedes that he
> stands a better chance of generating business. Of course, having developed the
> concept, it is conceivable that Walters feels entitled to use the name along with its
> marks. Given the realistic possibility that his only intent is to use that which he
> believes is rightfully his, this factor does not weigh in favor of Plaintiffs.

Memorandum Opinion & Order [R. 19, at 5.] Either way, "'intent is largely irrelevant in

determining if consumers likely will be confused as to source.'" *Wynn*, 839 F.2d at 1189

(quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.

1986)).

### h

"[A] 'strong possibility' that either party will expand his business to compete with

the other or be marketed to the same consumers will weigh in favor of finding that the

present use is infringing." *Daddy's*, 109 F.3d at 287 (quoting *Homeowners Group,* 931

F.2d at 1112 (citing Restatement of Torts § 731(b) & comment c (1938)).

Plaintiffs provide no evidence of plans for future expansion. Nevertheless, as has

been explained Walters is already competing with the same consumers and using the

same channels of commerce as Plaintiffs.

### 3

After considering these factors, it is clear that Walters' use of the marks is "likely

to cause confusion" among customers. Walters has provided no evidence to rebut

Plaintiffs' assertion about the strength of the mark. The foods being promoted by

Plaintiffs and Walters are virtually identical. The marks are not only "similar"—they are identical. Walters has done nothing to rebut evidence produced at the evidentiary hearing regarding actual confusion and evidence has been presented that shows Walters used the same marketing channels as Plaintiffs. Because the goods are inexpensive, there is a presumption that purchasers will not be overly critical so as to ensure they know which product they are buying. The only factor which does not weigh strongly in Plaintiffs' favor relates to Walters' intent and, as was explained, "'intent is largely irrelevant in determining if consumers likely will be confused as to source.'" *Wynn*, 839 F.2d at 1189 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)).

There is no question that Walters wanted to be included as a partial owner of the trademark name "STAXX." He explicitly requested that Knoll include him on the trademark application in 2010. [*See* R. 37 at 2; R. 37-2 at 24 (Aug. 10, 2010 Email from Walters to Knoll).] Nevertheless, Walters' desire to own this trademark can only carry him so far. As has been demonstrated, it is hard to imagine a case where customer confusion is more likely. For all the aforementioned reasons, there is no genuine issue of material fact and summary judgment is proper on all Plaintiff's trademark infringement claims.

## C

"[C]onversion is the wrongful exercise of dominion and control over property of another." *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. Ct. App. 1990) (citing *Illinois Central R. Co. v. Fontaine,* 217 Ky. 211, 289 S.W. 263

(1926)).  When considering whether conversion occurred, "neither motive, intent, nor good faith is material."  *Id.*

Plaintiffs asserts that Walters catered an event for Old Friends, Inc., while an employee of EAT BBQ, and that instead of remitting half of the proceeds to EAT BBQ and Dan Liebman, he kept the full payment for himself.  [R. 31-1 at 11.]  To support this claim, Plaintiffs direct the Court to a portion of Walters' deposition testimony where he admits that he used $200 worth of food from EAT BBQ, catered the event for Old Friends, Inc., cashed the check for $1,875 and then kept the cash.  [*See* R. 31-4 at 86.] Plaintiffs argue that Walters owes them half of the $1,875 catering fee plus the $200 in expenses, totaling $1,037.50.  [R. 31-1 at 11.]

Walters fails to provide any explanation or defense to this charge.  [*See* R. 37.] Plaintiffs presented evidence that demonstrated "an absence of evidence to support [Walters'] case," *Celotex.*, 477 U.S. at 325, and so the burden shifted to Walters to "go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue."  *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324.)  Walters did not meet this burden and, therefore, summary judgment is appropriate as to this claim.

**D**

In the Commonwealth of Kentucky, the law on the Tortious Interference with Prospective Contractual Relations is as outlined by Sections 766B, 767, and 773 of the *Restatement (Second) of Torts.  Randy's Body Shop, Inc. v. Kentucky Farm Bureau Mut. Ins. Co*, 2002-CA-001614-MR, 2004 WL 405742 (Ky. Ct. App. Mar. 5, 2004) (citing

*Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d

855, 857 (Ky. 1988)).

> Our law is clear that a party may not recover under the theory presented in the
> absence of proof that the opposing party "improperly" interfered with his
> prospective contractual relation. To determine whether the interference is
> improper, Section 767 sets forth seven factors to be considered by the court in
> ruling on the motion for directed verdict and, if the case is submitted, considered
> by the jury. Unless there is evidence of improper interference, after due
> consideration of the factors provided for determining such, the case should not be
> presented to the jury.

*Id.* (citing *Hornung*, 754 S.W.2d at 858. The seven factors listed in Section 767 of the

restatement are:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the
> other with which the actor's conduct interferes, (d) the interests sought to be
> advanced by the actor, (e) the social interests in protecting the freedom of action
> of the actor and the contractual interests of the other, (f) the proximity or
> remoteness of the actor's conduct to the interference and (g) the relations between
> the parties.

Restatement (Second) of Torts § 767 (1979). "[T]o prevail a party seeking recovery must

show malice or some significantly wrongful conduct. *Hornung*, 754 S.W.2d at 859

(citing *Prosser and Keeton on Torts* § 130 (W.P. Keeton ed. 5th ed. 1984.))

Walters contends that he did not intentionally interfere. [R. 37 at 5.] He further

notes that there is no cause of action for negligent interference. [*Id.*] Furthermore, if

there is an overarching theme to be found in Walters' response, it is that he genuinely

believes that he owns an interest in the Eat BBQ partnership. Consequently, Walters'

belief that he has a legitimate partnership interest prevents the Court from concluding at

this stage in the litigation, when the facts must be considered in the light most favorable

to Walters, that he acted with "malice" or engaged in "significantly wrongful conduct."

Therefore, with a genuine issue of material fact existing on the question of whether Walters acted with the requisite malice, summary judgment is not appropriate on this charge, at this time.

## E

Walters also asks this Court to join Susan Knoll and Steven Koch as necessary parties to this action. [R. 45.] As explained *supra*, his stated argument that Knoll and Koch have a potential claim "to the same extent and of the same type as to the existing plaintiffs" is unconvincing because Plaintiffs' claims primarily relate to the infringement of trademarks that are registered solely to Dan Liebman. Contrary to the above statement, Walters' memorandum is dedicated not to arguing that the Knoll and Kochs' potential claims are similar to Plaintiffs' but that Liebman, Knoll, Koch and Walters are all partners in Staxx BBQ and that Walters is owed a twenty-five percent share of that partnership. He argues that Knoll and Koch need to be joined to afford him full relief. Plaintiffs argue the joinder should be denied because it is late and because neither Knoll nor Koch are necessary for purposes of resolving the trademark claims. [R. 46.] Plaintiffs are silent, however, on whether Knoll and Koch are necessary for purposes of resolving the counterclaims that relate to Walters' partnership interest.

Federal Rule of Civil Procedure 16 establishes that the Court will issue a scheduling Order that, amongst many other things, will "limit the time to join other parties." Fed. R. Civ. P. 16 (b)(3)(A). This rule ensures that "at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, 1983 advisory committee's notes. Rule 16 further states that "[a] schedule may be modified only for good cause and

with the judge's consent." Fed. R. Civ. P. 16. Considerations underlying the Court's "good cause" determination are both the "moving party's diligence in attempting to meet the case management order's requirements" and "possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (additional citations omitted.)

The parties' planning meeting report, agreed to by both parties on February 1, 2013, states that "the deadline for the Defendant to move to amend pleadings or to join parties [should] be set at May 1, 2013." [R. 26 at 2.] On October 28, this Court discussed scheduling with the parties [R. 40] and, based on the representations made both in the Parties' Planning Meeting Report and at the status conference, this Court entered a scheduling order establishing:

> Plaintiff and Defendant both had until **May 1, 2013**, by which to seek leave to file any motions to join additional parties or to amend pleadings. This date has passed and, based on the representation of parties, will present no issue.

[R. 41 at 3.] It was not until March 20, 2014 that Walters asked this Court to join Knoll and Koch as indispensable parties. [R. 45.] Walters' motion is clearly late. It was filed ten months after the date agreed to by the parties, five months after the Court entered that Scheduling Order and seventeen months from the date the Complaint was filed. [R. 41, 44, 1.] The Court does note that Walters refers in both his originally filed answer and in his amended answer that Knoll and Koch should be added as parties under Rule 19. [R. 13 at 9; R. 32 at 6.] While not a motion, the original reference in his answer did, obviously, predate the deadlines.

Second, Federal Rule of Civil Procedure 19 addresses the Required Joinder of

Parties and is reproduced, in relevant part, below:

> A person…must be joined as a party if: **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: **(i)** as a practical matter impair or impede the person's ability to protect the interest; or **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. For purpose of determining whether Knoll and Koch are required parties, "the allegations of the amended counterclaim should be taken as true." *Markus v. Dillinger*, 191 F. Supp. 732, FN 5 (E.D. Pa. 1961) (citations omitted). Walters alleges that Knoll, Koch, Liebman and Walters are all equal-owners in a partnership owning Eat BBQ and related holdings. [*See* R. 32.] He further argues that he is an obligee to Koch, one of the investors, who wanted to be paid back by Liebman and Walters before they took any profits from the Staxx enterprise. As relief, Walters asks the Court to find that he is a twenty-five percent owner in that partnership. [R. 32 at 10.]

While the Court is troubled by Walters' unexplained lack of diligence in filing his motion, the Court also considers Rule 19's mandate that a person must be joined when that person's interest could be impaired in their absence. The Court notes that Plaintiffs have not yet provided a response as to whether Knoll and Koch are necessary parties for purposes of resolving the remaining non-trademark and counter claims. For all these reasons, the Court will reserve judgment on this issue.

**III**

Summary Judgment is proper on Plaintiffs' claims for trademark infringement and false designation under the Lanham Act, unfair competition under Kentucky's common-law, and conversion. Other claims survive this Order and the Court intends to maintain the current schedule going forward. Before advancing too far, however, the Court must confirm that all parties necessary to the resolution of the remaining claims are before the Court.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.      Plaintiffs' Partial Motion for Summary Judgment [R. 31] is **GRANTED** as to the claims for trademark infringement and false designation under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, § 1125(a), unfair competition under Kentucky's common-law, and conversion and **DENIED** as to the claim for Tortious Interference with Prospective Business Relations;

2.      Pursuant to the finding of Infringement, Defendant Walters is permanently enjoined and prohibited from using the STAXX and STAXX BBQ trademarks in any capacity;

3.      Walters' Motion to Join Necessary Parties [R. 45] is **DENIED** at this time although the Parties are **ORDERED** to provide supplemental briefing within fourteen (14) days of the issuance of this order on whether Knoll and Koch are necessary and indispensable parties in resolving the remaining claims and counterclaims; and,

4.      This matter will remain on the Court's active docket pending resolution of

the remaining issues, and thus the dates for the Final Pretrial Conference and the Jury

Trial will remain scheduled.

This 18th day of September, 2014.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge